IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**DONALD LEE HINTON,**

    Plaintiff,

v.                                                                      Civil Action No. **3:15CV626**

**SERGEANT FINCH,** *et al.*,

    Defendants.

## MEMORANDUM OPINION

Donald Lee Hinton, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] In his Particularized Complaint ("Complaint," ECF No. 22), Hinton contends that Defendants Sergeant Finch, Recreation Supervisor Walker, Unit Manager C. Townes, Sergeant Malone, Ombudsman C. Jones, and Doctor Mililani committed various constitutional violations with regard to Hinton's fall from a broken bench during his incarceration at the Lawrenceville Correctional Center ("LCC"). The matter is before the Court for evaluation pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.

### I.    PRELIMINARY REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims where the "'factual contentions are clearly baseless.'" *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570,

rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF ALLEGATIONS AND CLAIMS

Hinton's initial Complaint ("Initial Complaint," ECF No. 1) repeated the following unhelpful statement of his claims: "gross negligence, deliberate indifference, and reckless disregard for [Plaintiff's] health and safety" in violation of the First, Eighth and Fourteenth Amendments. (Initial Compl. 2 (capitalization corrected).) The Court noted that Hinton's allegations were extremely repetitive, conclusory, and failed to provide each defendant with fair notice of the facts and legal basis upon which his or her liability rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Accordingly, by Memorandum Order entered on August 17, 2016, the Court directed Hinton to particularize his Initial Complaint.

On August 29, 2016, the Court received another Complaint ("Second Complaint," ECF No. 20) from Hinton. This Second Complaint was nearly identical to the Initial Complaint that

3

Hinton previously filed and that the Court determined was deficient. Hinton repeated the identical repetitive, conclusory, and unhelpful statement of his claims. Hinton failed to correct any of the deficiencies identified in the Court's Memorandum Order and disregarded the Court's directives almost entirely. Nevertheless, the Court allowed Hinton one final attempt to correct the deficiencies in his Second Complaint. In his latest Particularized Complaint ("Complaint"), Hinton mostly complied with the Court's directives; however, he lacks a section containing a comprehensive statement of the facts giving rise to his claims. Instead, the facts are scattered throughout the Complaint making it difficult for the Court to provide a concise summary. Moreover, the Complaint is long on legal conclusions and short on facts. Accordingly, the Court has parsed the Complaint and makes a list of pertinent facts as follows:[2]

1.  On "June 25, 2016, after a 'work order' for bolts missing from the bench was entered, Donald Lee Hinton sat on the bench and fell back injuring his head, neck, and back needing immediate medical treatment." (Compl. ¶ 27.)

2.  "Sergeant Malone . . . was there and saw the incident. Because Hinton complained of head, neck, and back pain, Malone took him to medical." (*Id.* ¶¶ 69–70 (paragraph numbers omitted)).

3.  "Sergeant Finch admitted he knew the bolts were missing from the bench before Hinton fell because he filed a 'work order'." (*Id.* ¶ 14.)

4.  "Walker, Recreation Supervisor had actual knowledge the bolts were missing because Sergeant Finch had filed a 'work order'." (*Id.* ¶ 28.)

5.  "After the bench caused Hinton to fall, Sergeant Malone took Hinton to medical. Nurse Moody RN referred Hinton to Dr. Mililani. Nearly a month passed before Dr. Mililani saw Hinton. . . . Dr. Mililani immediately ordered X-rays and pain medication; meaning Hinton had no medication to ease the pain for twenty-six (26) days." (*Id.* ¶¶ 9–12 (paragraph numbers omitted).)

6.  "Hinton is a diabetic and suffers from hypertension magnifying the head, neck, and back injury suffered in the fall. Dr Mililani knows about this." (*Id.* ¶ 46.)

---

[2] The Court corrects the punctuation, capitalization, spelling, and omits the emphasis in the quotations from the Complaint.

7. C. Townes, Unit Manager "lied in her response of July 1, 2015 to Hinton's Informal Complaint #01855, saying: 'It was Hinton's fault he was injured.' Townes again lied in her response of July 26, 2015 to Hinton's Informal Complaint #02185, saying, "Staff could not verify the bench was broken.'" (*Id.* ¶¶ 55–56 (paragraph numbers omitted).)

8. "Townes failed to follow the Rules of Operating Procedure 866.1 requiring an investigation." (*Id.* ¶ 63.)

9. "Hinton sent a request to Malone asking for a copy of the 'incident report' that is required when an incident of this nature occurs. Malone never responded. Because Malone did not respond on July 12, 2015, Hinton filed an Informal Complaint #02068. Malone refused to respond . . . . (*Id.* ¶¶ 71–72 (paragraph numbers omitted).)

10. "Hinton filed Regular Grievances for both Informal Complaints but C. Jones refused to give them a tracking number denying the Facility Unit Head (warden) or his designee to respond per OP 866.1 . . . ." (*Id.* ¶ 97.)

Hinton raises the following claims for relief:

Claim One: "Sergeant Finch is liable for the physical injury suffered by Donald Hinton because Finch admitted he knew the bolts from the bench were missing because he filed a work order and violated Hinton's Eighth and Fourteenth Amendments." (*Id.* at 2.)

Claim Two: "Recreation Supervisor Walker has overall responsibility of all recreation equipment including but not limited to the benches on recreation yard 'B' and is liable for the physical injury suffered by Donald Lee Hinton a violation of the Eighth and Fourteenth Amendments." (*Id.* at 3.)

Claim Three: "Twenty-six days Hinton endured in pain because Doctor Mililani refused to see him following his physical injury falling from a bench with missing bolts an Eighth and Fourteenth Amendment violation." (*Id.* at 4.)

Claim Four: "C. Townes, Unit Manager, who has been terminated, lied in response to Hinton's timely filed Informal Complaint LVCC–01855 and #02185 violating the First, Fifth, Eighth and Fourteenth Amendments." (*Id.* at 6.)

Claim Five: "Sergeant Malone refused to respond to Hinton's timely request and Informal Complaint violating Hinton's First, Fifth, Eighth, and Fourteenth Amendments." (*Id.* at 7.)

Claim Six: "C. Jones refused to allow Sergeant Malone to respond to Hinton's timely filed Informal Complaint and Warden, Ed Wright to respond to Hinton's timely filed grievance violating Hinton's First, Fifth, and Fourteenth Amendments." (*Id.* at 8.)

Hinton requests monetary damages. For the reasons stated below, Claims One, Two, Four, Five, and Six will be DISMISSED. Claim Three will be DISMISSED WITHOUT PREJUDICE.

### III. ANALYSIS

#### A. Claims Pertaining to Grievance Procedures

In Claims Four, Five, and Six, Hinton faults Defendants Townes, Malone, and Jones for lying during or hindering his ability to utilize the grievance procedures. Hinton claims this is a violation of his First, Fifth, Eighth, and Fourteenth Amendment rights. Contrary to Hinton's assertions, "there is no constitutional right to participate in grievance proceedings." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Because Hinton enjoys no constitutional right to participate in grievance proceedings, his allegations that Defendants Townes, Malone, and Jones lied in an Informal Complaint, refused to respond to Hinton's Informal Complaint, or hindered the grievance process are legally frivolous. *See Banks v. Nagle*, NOS. 3:07CV–419–HEH, 3:09CV14, 2009 WL 1209031, at *3 (E.D. Va. May 1, 2009) (citation omitted). Moreover, simply "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation." *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007). Accordingly, Claims Four, Five, and Six will be DISMISSED.

#### B. Eighth Amendment Claims

As a preliminary matter, Hinton complains in Claims One through Three that Defendants Finch, Walker, and Mililani violated both his Eighth Amendment rights and his Fourteenth Amendment substantive due process rights. "[I]t is now well established that the Eighth Amendment 'serves as the primary source of substantive protection to convicted prisoners,' and the Due Process Clause affords a prisoner no greater *substantive* protection 'than does the Cruel

6

and Unusual Punishments Clause.'" *Williams v. Benjamin*, 77 F.3d 756, 768 (4th Cir. 1996) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). Accordingly, to the extent Hinton challenges the conditions of his confinement or the deliberate indifference to his medical care in Claims One, Two, and Three, the Court will evaluate those claims under the Eighth Amendment.

Moreover, while Hinton includes Eighth Amendment language such as "deliberate indifference" in his Complaint, the majority of Hinton's language is tailored to state law negligence. However, Hinton does not allege state law claims in his Complaint.[3] As explained below, negligence does not amount to a constitutional violation.

To allege an Eighth Amendment claim, an inmate must allege facts that indicate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts to suggest that the deprivation complained of was extreme and amounted to more than the "'routine discomfort'" that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (citation omitted). To demonstrate such extreme deprivation, Hinton "must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *Id.* at 634 (quoting *Strickler*, 989 F.2d at 1381).

---

[3] For example, Hinton provides allegations about duty, breach, causation, and harm. He defines negligence, discusses what a "prudent person" would have done, explains that Defendants failed to warn him of the danger, and explains that he cannot be faulted in the inquiry because "he had no way of knowing the bolts were missing." (Compl. ¶¶ 29–30, 34.)

7

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant acted with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (stating same). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

### 1. Defendants Finch and Walker

In Claim One, Hinton contends that Defendant "Finch is liable for the physical injury suffered by Donald Lee Hinton because Finch admitted he knew the bolts from the bench were missing because he filed a work order and violated Hinton's Eighth and Fourteenth Amendments." (Compl. 2.) Hinton contends that Defendant Finch "breached security by not following through on the immediate repair, removal, or notifying Hinton the bench was

dangerous." (*Id.* ¶ 19.) Presumably, Hinton argues that this purportedly unsafe condition violates the Eighth Amendment.

The Eighth Amendment protects prisoners from cruel and unusual living conditions. *Rhodes v. Chapman*, 452 U.S. 337 (1981). However, "individuals do not have a constitutional right (1) to be free from a government employee's negligence, even if it causes an injury, or (2) to have the government protect them from such an injury." *Ball v. City of Bristol, Va., Jail*, No. 7:10CV00303, 2010 WL 2754320, at *1 (W.D. Va. July 12, 2010) (citing *Daniels v. Williams*, 474 U.S. 327 (1986)). Courts have routinely held that slip and fall cases fail to state a claim of constitutional dimension under § 1983. *See Bacon v. Carroll*, 232 F. App'x 158, 160 (3d Cir. 2007) (holding that failure to warn of slippery floor stated a claim of mere negligence and not a constitutional violation); *Reynolds v. Powell*, 370 F.3d 1028, 1031–32 (10th Cir. 2004) (finding that slippery conditions arising from standing water in shower was not a condition that posed a substantial risk of serious harm, even where inmate was on crutches and warned employees that he faced a heightened risk of failing); *Beasley v. Anderson*, 67 F. App'x 242, 242 (5th Cir. 2003) (citations omitted) (holding slip and fall claim sounded in negligence and was insufficient to allege a constitutional claim). Similarly, Hinton's "failure to warn" claim states a claim of negligence, not an Eighth Amendment violation. *Cf. Daniels*, 474 U.S. at 328 (holding inmate's claim that he was injured when he fell down stairs after tripping on pillow left by deputy sheriff amounted to negligence and was not a constitutional violation). Moreover, Hinton's allegation that Defendant Finch knew that the bench was broken because he placed a work order for its repair fails to indicate that Defendant Finch was aware that the bench posed a substantial risk of harm to Hinton or that he responded unreasonably. *See Ball*, 2010 WL 2754320, at *2 (explaining that the "mere fact that the leak in Ball's cell was not fixed in time to prevent the puddle in which Ball slipped indicates, if anything, that officers may have been

negligent in not calling the plumber a few days earlier"). Hinton fails to state an Eighth Amendment claim against Defendant Finch and Claim One will be DISMISSED.

Similarly, in Claim Two, Hinton contends that "Recreation Supervisor Walker has overall responsibility of all recreation equipment including but not limited to the benches on recreation yard 'B' and is liable for the physical injury suffered by Donald Lee Hinton a violation of the Eighth and Fourteenth Amendments." (Compl. 3.) Hinton argues that "Walker, Recreation Supervisor had actual knowledge the bolts were missing because Sergeant Finch had filed a 'work order'." (*Id.* ¶ 28.) To the extent that Hinton argues that Walker should have known about the broken bench and should have properly maintained it, for the same reasons stated above, Hinton fails to state an Eighth Amendment claim. The mere fact that the bench remained broken after a work order had been entered establishes nothing more than negligence. *Cf. Daniels*, 474 U.S. at 328; *Ball*, 2010 WL 2754320, at *2. Accordingly, Claim Two will be DISMISSED.

### 2. Defendant Mililani

With respect to the denial of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is "serious" if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

In the context of delayed medical care, the objective-prong analysis does not end there. In addition to demonstrating that a medical need that was objectively serious, a plaintiff must also establish that the delay in the provision of medical care "'resulted in substantial harm.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272,

1276 (10th Cir. 2001)); *see Webb v. Hamidullah*, 281 F. App'x 159, 165 (4th Cir. 2008). "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Shabazz v. Prison Health Servs., Inc.*, No. 3:10CV190, 2012 WL 442270, at *5 (E.D. Va. 2012) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

With respect to the subjective prong, "[t]o establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

In Claim Three, Hinton contends that "[t]wenty six days Hinton endured pain because Doctor Mililani refused to see him following his physical injury falling from a bench with missing bolts an Eighth and Fourteenth Amendment violation." (Compl. 4.) Hinton provides little pertinent factual support for this claim. He states: "After the bench caused Hinton to fall, Sergeant Malone took Hinton to medical. Nurse Moody RN referred Hinton to Dr. Mililani. Nearly a month passed before Dr. Mililani saw Hinton. . . . Dr. Mililani immediately ordered X-rays and pain medication; meaning Hinton had no medication to ease the pain for twenty-six (26) days." (*Id.* ¶¶ 9–12 (paragraph numbers omitted).) Hinton further provides: "Hinton is a diabetic and suffers from hypertension magnifying the head, neck, and back injury suffered in the fall. Dr Mililani knows about this." (*Id.* ¶ 46.)

From Hinton's bare allegations, it is clear that Hinton was promptly taken to the medical department and was seen by the nurse and was scheduled to see the doctor. Hinton apparently disagrees with the timing of seeing the doctor and faults Dr. Mililani for the delay in his treatment. However, Hinton fails to demonstrate any deliberate indifference to a serious medical need by the delay in seeing Dr. Mililani. Further, Hinton fails to allege facts that plausibly suggest that Dr. Mililani was aware of Hinton's condition prior to actually seeing Hinton.

Hinton fails to allege facts to satisfy the objective prong of the Eighth Amendment.[4] While the failure to treat injuries from a fall could result in sufficiently serious harm under the Eighth Amendment, Hinton fails to allege such injuries here. Hinton fails to describe with any specificity what injuries he suffered from his fall from the collapsed bench. Moreover, Hinton does not allege facts indicating that Dr. Mililani failed to provide him with any treatment, just that he was seen by Dr. Mililani twenty-six days after Hinton desired to have an appointment. Hinton fails to allege facts indicating that he suffered any injury, much less a serious or significant physical injury from Dr. Mililani's delayed appointment. *See Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1983).

In his Complaint, Hinton vaguely asserts that, based on his hypertension and diabetes, Dr. Mililani should have known that his head, neck, and back injury would be "magnif[ied]." (Compl. ¶ 46.) Hinton fails to allege with any specificity what complications he experienced as a result of Dr. Mililani's purported inattention. At most, Hinton states that he was forced to go without "medication to ease the pain for twenty-six (26) days." (Compl. ¶ 12.) Hinton's bare allegation that he suffered from "pain" is insufficient to satisfy the requisite level of seriousness

---

[4] While Hinton also fails to allege facts indicating that Dr. Mililani knew of and disregarded an excessive risk of harm to Hinton, and thus fails to satisfy the subjective component of the Eighth Amendment, no need exists to extensively examine that here. Hinton's claims may be readily dismissed because he fails to demonstrate any injury from Dr. Mililani's actions.

for an Eighth Amendment claim against Dr. Mililani. *See Hanrahan v. Mennon*, 470 F. App'x 32, 33 (2d Cir. 2012) (explaining that a condition is sufficiently serious of it is "a condition of urgency, one that may produce death, degeneration, or extreme pain" (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996))); *Strickler*, 989 F.3d at 1381.

Hinton also alleges no injury from the delay in being seen by Dr. Mililani. Hinton does not allege facts that plausibly suggest that he suffered any adverse effects from the twenty-six-day delay. *See Mata*, 427 F.3d at 751. Furthermore, Hinton fails to allege facts indicating that the delay substantially harmed his treatment. *See Wood v. Housewright*, 900 F.2d 1332, 1334–35 (9th Cir. 1990) (explaining that delay of "several days" in fixing a broken shoulder did not harm treatment, "considering that the only remedy immediately available was a prescription for painkillers"). Thus, Hinton fails to allege facts that plausibly indicate that the delay in seeing Dr. Mililani itself caused him substantial harm. *See Webb*, 281 F. App'x at 166. Because Hinton alleges no injury from Dr. Mililani's actions, he fails to satisfy the objective prong of the Eighth Amendment. Accordingly, Claim Three will be DISMISSED WITHOUT PREJUDICE.

## IV. CONCLUSION

Accordingly, Claims One, Two, Four, Five, and Six will be DISMISSED. Claim Three will be DISMISSED WITHOUT PREJUDICE. The action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

Date: 1/18/17
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge